UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Andao Silbaugh,** | ) | **CASE NO. 1:11 CV 1299** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Viking Magazine Services,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon plaintiff's Motion for Class Certification (Doc. 10). This case is brought under the Telephone Consumer Protection Act (TCPA) and seeks class action certification. For the following reasons, the motion is GRANTED.

### Facts

Plaintiff Andao Silbaugh brought this Complaint for Class Action against defendant Viking Magazine Services alleging the following. The TCPA prohibits the making of a phone call to a cellular telephone using an automatic telephone dialing system without the express prior consent of the called party. A text message is a call under the TCPA. Plaintiff has never expressed consent to receive a phone call or text message from defendant. On

February 21, 2010, plaintiff received a text message from defendant that read, "Guess what! You were qualified to receive $250 in free gift cards today ONLY! To find out more call 888-863-5570 now! TXT STOP TO STOP." Defendant sent this text message to plaintiff using an automatic telephone dialing system (ATDS). Plaintiff called the phone number in the text message and spoke to an agent of defendant who stated she was working for defendant and that the text message was sent by defendant. Defendant's agent then attempted to sell defendant's magazine subscription service. The Complaint purports to bring the action on behalf of plaintiff and all others similarly situated who also received text message calls from defendant's automatic telephone dialing system without giving defendant prior express consent. Count One alleges a violation of the TCPA. Count Two seeks injunctive relief.

Plaintiff submits the deposition testimony of David Moulder, defendant's owner, and Jere Monda, defendant's Marketing Director/Sales Manager. The testimony provides further factual foundation as generally discussed herein. Defendant does not specifically dispute plaintiff's presentation of these facts. Viking is a company located in Minnesota which sells magazine subscriptions over the telephone. Defendant owns an ATDS which it uses to dial landlines, but not cell phones which are manually dialed. Viking acquires cell phone numbers by purchasing them from list brokers. At some point, a California company named Xcel Direct was referred to Moulder "as a source to get names." Moulder understood that Xcel Direct would "text people so [those people] would call us." Moulder was told by Xcel Direct that Xcel Direct had obtained consents to text the people. But Moulder did not take any steps to confirm this "other than trusting the guy." In early 2011, defendant entered into a verbal agreement with Xcel Direct to send the text messages on a "test" basis to see if they would

2

generate sales. The messages offered free gift cards or entry into a $1 million sweepstakes if the receiver called the number on the text.  Between February 14, 2011 and March 11, 2011, Xcel Direct sent thousands of the texts, and 1030 people called Viking in response.  When contacted by people who received the texts, Viking would attempt to sell magazine subscriptions.  Because defendant did not receive a high enough volume of calls in response to the texts, and those who did call did not generate the sales desired, the "test" was terminated.

This matter is now before the Court upon plaintiff's Motion for Class Certification.

**Discussion**

Plaintiff requests certification of a class "consisting of all persons sent Viking texts with an ATDS since February 1, 2011."[1]  (Doc. 10 at 8)

Rule 23 of the Federal Rules of Civil Procedure governs class actions in federal court. To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b).

Under Rule 23(a), a party seeking class certification must show that (1) the class is so

---

[1] Much of plaintiff's brief improperly argues in favor of the merits of its case. Rule 23 "does not require a district court, in deciding whether to certify a class, to inquire into the merits of the plaintiff's suit. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.")" *Beattie v. Centurytel, Inc.,* 511 F.3d 554 (6th Cir. 2007) (other citations omitted). In that regard, nothing stated in this Memorandum of Opinion and Order is intended to be a determination on the merits of a disputed factual matter.

3

numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. In addition to the prerequisites of Rule 23(a), a party seeking class certification must satisfy one of the three subsections of Rule 23(b). Here, plaintiff maintains that the class is properly certified under Rule 23(b)(3), which requires the court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

Defendant argues that plaintiff fails to satisfy prerequisites (2) and (3) of Rule 23(a), and the "superior" element of Rule 23(b)(3). Defendant does not appear to dispute prerequisites (1) and (4) of Rule 23(a) and, therefore, the Court assumes they are met, i.e., numerosity and adequacy of representation, for the reasons stated by plaintiff.

### Rule 23(a)

#### commonality and typicality

"Rule 23(a)(2) requires a common question of law or fact. Commonality does not require that all class members share identical claims and facts. Rather, plaintiff must demonstrate the existence of 'a single issue common to all members of the class.'" *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Services, Inc.,* 2010 WL 5439737 (E.D.Mich. Dec. 27, 2010) (citing *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 (6th Cir.1997), *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988), *In re Am.*

*Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th  Cir.1996) ).

Plaintiff asserts that the following are common questions of law or fact:

- Defendant's assertion that it lacked knowledge that the calls were being robo-dialed.

- Whether defendant obtained valid consents from consumers to receive the text messages.

- Defendant's knowledge of its liability for sending text messages for marketing purposes without confirming express consents had been obtained.

- The level of recovery to class members.

- Whether defendant used an ATDS to call the class members.

- Whether defendant knowingly or willfully violated the TCPA.

Defendant maintains that these questions cannot be answered commonly, but must be evaluated for each proposed class member.   In particular, defendant argues that plaintiff would need to prove that an ATDS was used for each text message received by potential class members.  Similarly, defendant asserts that whether there was express consent would require an individualized inquiry of each class member.  As for damages, defendant contends that individual inquiry of class members would need to be made regarding whether actual injury was suffered.

To establish typicality, "plaintiffs must show that their injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565 (6th Cir. 2004) (citations omitted).

Plaintiff asserts that the wrong was defendant's use of the ATDS to send Viking text messages to the cell phones of the plaintiff and the class and, therefore, plaintiff's claims are typical of those of the class members.

5

Defendant contends that the claims of plaintiff are not typical given that even if plaintiff could show that she did not consent to the text, individual proof as to class members' consent would still be required. Additionally, defendant asserts that it must be proven that each class member actually received a text message, not merely that the messages were sent.

For the following reasons, the Court finds that defendant's arguments are not persuasive and commonality and typicality are met.

The Sixth Circuit recognizes "that the commonality and typicality requirements 'tend to merge,' and that 'both serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.' " *Mitchell v. Kentucky Dept. of Corrections,* 2000 WL 1562842 (6th Cir. Oct. 12, 2000) (citing *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir.1998)) (other citations and internal quotations omitted).

Defendant contends that the Court would have to determine whether an ATDS was used as to each text sent to each potential class member. This Court disagrees. David Moulder, defendant's owner, testified at deposition that all the messages were sent for Viking by its contractor, Xcel Direct, and he assumed that Xcel was using an ATDS. Defendant offers no other evidence that some, or all, of the messages were not robo-dialed. Moulder also testified at deposition that he expected Xcel Direct to obtain consents or opt-ins from the recipients for the text messages, although he did not verify this. The issue of consent is only necessary if an ATDS was being used. Additionally, plaintiff presents evidence that Jere Monda, defendant's Marketing Director, sent Moulder an email pointing out the risks of robo-

6

dialing without obtaining consent by attaching a link to an article concerning a company which sent text messages to cell phones without obtaining consent. Defendant does not dispute this evidence.

Next, defendant maintains that whether there was express consent would require an individualized inquiry of each class member. Again, defendant fails to support its argument. The issue of which party bears the burden of establishing consent is a common question. Moreover, Moulder admitted at deposition that he did not have consent from any person, or take steps to confirm that consent was made. Having produced no evidence that any individual consented to receive the text messages in response to plaintiff's presentation of Moulder's testimony, defendant is unable to realistically argue that individual issues regarding consent outweigh the commonality.

Finally, defendant contends that individual inquiry of class members would need to be made regarding whether actual injury was suffered given that it would need to be determined in each case whether the recipient was charged for the text message. Defendant points to a 1992 Federal Communications Commission (FCC) Order which stated that the TCPA prohibits only automated calls to cell phones where the recipient is charged for the call. (Doc. 11 Ex. A) But, plaintiff satisfactorily demonstrates that every court examining the pertinent language of the TCPA has concluded that a plaintiff does not have to prove that he was charged for a call to state a claim under the TCPA, and the position of the FCC in the 1992 Order has been rejected by every court that has considered it. (See Doc. 12 at 2-3) Regardless, as plaintiff points out, the dispute presents a common issue.

For these reasons, the Court finds commonality to be present.

As for typicality, defendant restates its arguments, which have been previously rejected, that individualized inquires would need to be made. Additionally defendant asserts that plaintiff cannot have a claim that is typical of the class because in each case it would need to be proven that the class members actually received a text message, rather than that one was merely sent. Plaintiff, however, points out that courts have found that the statute does not require that the called party receive the call. Defendant does not present contrary law. Even so, the issue would present a common dispute.

For these reasons, the Court finds typicality to be present.

**Rule 23(b)(3)**

The Court also finds Rule 23(b)(3) to be satisfied. This portion of the rule requires that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. "To satisfy the predominance requirement, a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Frickco Inc. v. Novi BRS Enterprises, Inc.,* 2011 WL 2079704 (E.D.Mich. May 25, 2011) (citing *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 564 (6th Cir.2007) (internal quotations omitted). "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.*

Relying on the deposition testimony of Moulder and Monda, plaintiff asserts that defendant set up a single text message marketing campaign that ran for a one month period

8

which was conducted in the same manner with respect to all of the class members. Plaintiff believes that its evidence supports its position that defendant used an ATDS to send the text messages without obtaining express consent or opt-ins. Both Moulder and Monda testified as to their knowledge that the latter would have been necessary had Xcel Direct been using an ATDS. Plaintiff further asserts that even if defendant could produce some form of opt-ins from class members, the common question of how defendant obtained them would still predominate given that they would most likely have been generated from a single source.

Defendant maintains that a class action is not the superior method to adjudicate the claim. Defendant's argument is not persuasive. In support of its assertion, defendant states that "many courts, including those located in the Sixth Circuit, have universally held that TCPA claims are not appropriate for class action certification." (Doc. 11 at 2) But, defendant's cases are not apposite. Furthermore, defendant points to Ohio cases and district court cases from Illinois, which is not located in the Sixth Circuit.

Defendant relies substantially on *Miller v. Painters Supply & Equipment Co.,* 2011 WL 3557018 (Ohio App. 8th Dist. Aug. 11, 2011). There, the court affirmed denial of class certification of a TCPA claim involving unsolicited facsimile advertisements on the basis that individualized determination would be required to establish whether the fax was unsolicited in each case. Significantly, evidence showed that potential plaintiffs were existing customers of defendant and mass faxes were not sent to numbers from a directory. Evidence showed that the fax recipients either expressly solicited announcements of sales and special offers, or expressly consented to receiving advertisements. Clearly, *Miller* has no similarity to the case herein where the undisputed evidence, at this point, shows that mass texts were sent to cell

phone numbers from a list which contained no previous connection to defendant.

Nor is *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.,* 274 F.R.D. 229 (S.D.Ill. 2011), helpful to defendant.  There, the plaintiff wanted to represent a class of every recipient of a prerecorded message from defendant during the relevant period.  In denying class certification, the district court pointed out that plaintiff was unlike most of the potential class members because he received prerecorded messages from defendant given that he had a phone number which had previously been used by someone who consented to receiving defendant's prerecorded advertisements although plaintiff himself had given no such consent. On the other hand, the call list at issue, namely the proposed class, consisted of individuals who had voluntarily given their phone number knowing that they would receive telephone advertisements from defendant. The court specifically noted that the case did not involve a situation where the defendant had purchased a list of residential telephone numbers from a vendor and proceeded to cold call each number, including plaintiff's, to deliver a prerecorded message.  In the latter case, the court recognized that there would be a likelihood that a "great majority" of the recipients would, like plaintiff, have a TCPA claim because there would be little basis to believe that express consent was given to be called.  The herein case appears to be more similar to the latter scenario posed by the court and, therefore, is clearly distinguishable.

Likewise, class certification in *G.M Sign, Inc. v. Brink's Mfg. Co.,* 2011 WL 248511 (N.D.Ill. Jan. 25, 2011), was not appropriate given that individualized questions predominated where there was evidence that relevant fax recipients consented to receive the faxes and were in an established business relationship with defendant.  In such a case, a TCPA claim would

10

be unavailable to those class members. Plaintiff, unlike the herein case, had not introduced evidence that defendant had engaged in "fax blasting" in a manner that was common to all or most recipients. Here, there is evidence that defendant did engage in a single course of conduct with respect to all class members.

Finally, defendant contends that the amount of statutory damages, which includes a range from $500 to $1,500, greatly outweighs actual damages suffered by the class and, therefore, certification should be denied. As plaintiff points out, however, defendant does not explain how this defeats superiority.

For the foregoing reasons, plaintiff's Motion for Class Certification is granted.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 1/10/12